**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DORIS RAMOS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO. 15-52** |
| **GENESIS HEALTHCARE, LLC, et al** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                 **October 1, 2015**

Congress requires employers using background checks to strictly adhere to specific protections afforded job candidates under the Fair Credit Reporting Act ("FCRA"). Plaintiff Doris Ramos ("Ramos") claims potential employer Genesis Healthcare, LLC ("Genesis") provided her no reasonable opportunity to dispute information on a background report before taking adverse action terminating her conditional employment offer. She also claims a Genesis subsidiary, CareerStaff Unlimited, Inc. ("CareerStaff"), obtained the background report without her authorization although she authorized Genesis and its agents. Ramos also claims the reporting company, General Information Services ("GIS"), failed to accurately report her criminal history and improperly reported a record of a felony criminal conviction more than seven (7) years old. We find, as a matter of law, Ramos has standing to assert her claims; Genesis' July 22, 2014 pre-adverse action notice complied with the FCRA; Ramos authorized CareerStaff to receive her report; and, GIS properly reported a record of a felony criminal conviction more than seven (7) years old. We also hold there are questions of fact whether GIS negligently failed to accurately report her criminal history. In the accompanying Order, we grant in part and deny in part Defendants' motions for summary judgment.

## I.   Undisputed Facts[1]

Genesis provides skilled nursing, rehabilitation therapy and related services to patients. Genesis requires persons obtaining a job offer ("conditional employees") pass a background screening before hiring.   SOF ¶¶4, 55.   Genesis hires GIS to conduct the background investigation screening.   SOF ¶56.   GIS researches conditional employees' criminal backgrounds.  SOF ¶7.  Genesis provides GIS an outline, or matrix, of various types of criminal offenses which would disqualify a conditional employee.  GENApp. 131.  Using the Genesis matrix, GIS assigns each individual report one of three "grades," reflecting the candidate "Meets" requirements, "Does not meet," or "Requires HR Review."  SOF ¶8, 10; GENApp.104-05.   GIS also issues the required FRCA notices of potential and final adverse action to the conditional employees.  SOF ¶6, GENApp. 59-99.

On July 3, 2014, Ramos, a licensed occupational therapist, obtained a job application for "Therapists Unlimited, A Division of CareerStaff Unlimited", a Genesis subsidiary.   Haley Srubar, a Genesis Staffing Coordinator, contacted Ramos.  GENApp. 7-8, App. 673.  The job application refers to "Genesis Healthcare Group, Inc. and its subsidiaries" and the materials accompanying the application reference CareerStaff and Therapists Unlimited.   GENApp. 8; App. 13, 14.[2]

---

[1] Our policies and procedures require a Statement of Undisputed Facts and an Appendix in support of summary judgment.  Genesis and Ramos' combined Statement of Undisputed Facts ("SOF") is filed at ECF Doc. No. 65-1. Genesis submitted an Appendix ("GENApp.") (ECF Doc. No. 48) and Supplemental Appendix (ECF Doc. No. 58, 3-5), which Ramos supplemented by sequential numbering (ECF Doc. No. 65-2). GIS submitted an Appendix ("App.") (ECF Doc. No. 36, 5-9), which Ramos supplemented with sequential numbering (ECF Doc. No. 45, 2-3). GIS and Ramos' combined Statement of Undisputed Facts ("GISSOF") is filed at ECD Doc. No. 45-1.

[2] CareerStaff is a healthcare staffing company owned by Genesis. SOF ¶51. Ramos understood CareerStaff and Genesis to be the same entity.  App. 150.  During the application process, Ramos

2

On July 7, 2014, Ramos submitted her application to Genesis' Srubar. SOF ¶14. Ramos signed a "Consumer Authorization" permitting investigator GIS to request information about her; authorizing anyone to provide information about her to GIS; authorizing GIS to provide Genesis one or more reports based on information; and, authorizing Genesis to share its reports with others for legitimate business purposes related to Ramos' employment. SOF ¶67, GENApp. 297. The Authorization permits GIS to "investigate [Ramos'] education, work history, professional licenses and credentials, references, address history, social security number validity, right to work, criminal record, lawsuits, driving record, credit history, and any other information with public or private information sources." *Id.*

On July 9, 2014, Genesis/CareerStaff Staffing Manager Nikita Shepard ("Shepard") interviewed Ramos. SOF ¶¶15-16. Ramos gave Shepard her completed employment application and Consumer Authorization form. SOF ¶16. Shepard verbally offered Ramos a job during the interview, and followed up with a written conditional offer by email the following day. SOF ¶17-18. Shepard conditioned the offer on Shepard's receipt of a satisfactory background record, consistent with state and federal laws and company policy. SOF ¶18; GEN App. 14-15.

Genesis Human Resources Staffing Coordinator Srubar requested Ramos' background screening on July 9, 2014. SOF ¶¶19, 70. On July 14, 2014, GIS' pre-screen report revealed Ramos had prior convictions and action on her professional occupational therapy license. SOF ¶20. This report did not automatically disqualify Ramos. Genesis instructed GIS to proceed with the background screen so it could "review all of the information prior to making a decision." SOF ¶21; GENApp. 342-46.

---

addressed a letter to "CareerStaff Unlimited – Compliance Dept," which she understood to be Genesis. SOF ¶54; GENApp. 20, 449.

3

GIS graded the July 18, 2014 completed background report "Require[d] HR Review." SOF ¶22; GenApp. 333.  GIS' background report described three (3) prior criminal convictions, including one felony conviction involving injury to a child. SOF ¶23.

On July 21, 2014, the Human Resources Compliance Team of Genesis emailed Ramos' background report to Genesis' Director of Human Resources, Kate McKinnon. SOF ¶24. The Human Resources Compliance Team and Genesis' McKinnon evaluated Ramos' reported criminal conviction for Felony – Injury to Child. After an exchange of e-mails, Genesis disqualified her based on its matrix requiring conviction involving injury to children. SOF ¶26, App. 578. Accordingly, on July 22, 2014, Genesis graded Ramos' report "Does Not Meet." SOF ¶28.

After this disqualification and grading of "Does Not Meet", GIS sent a July 22, 2014 letter to Ramos stating in part:

> Genesis Healthcare CareerStaff Unlimited has or will be completing their review of your application within the next few days, and may take action based on the enclosed report…You have the right to dispute the accuracy or completeness of any information contained in the report by contacting GIS directly.

¶SOF 31, App. 337.

Genesis' Shepard called Ramos on July 25, 2014 and explained Genesis "flagged" her employment application due to the reported felony conviction reflecting injury to a child. ¶SOF 35-36. Ramos admitted to Shepard she had been charged with the felony, but stated she pleaded guilty to a lesser offense. ¶SOF 37-39. Shepard relayed Ramos' explanation to Genesis' McKinnon. ¶SOF 40. On July 27, 2014, Ramos followed up with an email to Genesis' Shepard, explaining her version of the events. ¶SOF 41. Shepard relayed the information to McKinnon, who in turn shared Ramos' challenge to the report and explanation with Genesis' Human Resources Compliance Coordinator Sharon Esquibel ("Esquibel") on July 28, 2014. SOF ¶43,

App. 361. Despite the explanation, Genesis confirmed on July 28, 2014 it "will not be able to move forward with her." App. 543.

On July 29, 2014, Shepard told Ramos of Genesis' decision to revoke the job offer. ¶SOF 46. By letter the same day, GIS also told Ramos of Genesis' decision to not extend an offer based on information in a consumer report. ¶SOF 47. Over a month later, in September 2014, Ramos faxed a judgment showing Ramos' conviction for assault to GIS. SOF ¶49.

## II.    Analysis

Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007). The FCRA requires "'any person [who] takes any adverse action with respect to any consumer that is based in whole or in part on any information contained in a consumer report' must notify the affected consumer." *Id*; 15 U.S.C. §1681m(a). The FRCA permits a private right of action against businesses. If the jury finds the potential employer's violation is negligent, the prospective employee is entitled to actual damages. §1681o. Willful violations permit recovery of actual, statutory or punitive damages. §1681m(a).

### A. Ramos has standing to assert claims under FCRA.

Genesis and CareerStaff argue Ramos lacks Article III standing to pursue FRCA claims under 1681b(b)(3), because she has not alleged a legally cognizable injury-in-fact. Ramos has not alleged actual injury to her caused by Genesis. Instead, she alleges a statutory violation.

Standing is a threshold issue addressed before substantive arguments. *Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992). Ramos must show standing by:

> First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal

5

connection between the asserted injury and the asserted wrongful conduct in that the injury has to be fairly traceable to the challenged action of the defendants and not the result of the independent actin of some third party not before the court. Third, it must be likely, as opposed to merely 'speculative', that the injury will be redressed by a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal quotations omitted).

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Sheller, P.C. v. U.S. Dep't of Health & Human Servs.*, No. 15-440, 2015 WL 4878088, at *2 (E.D. Pa. 2015) (quoting *Simon v. E. Kentucky Welfare Rights Org.*, 426 U.S. 26, 37, (1976)). "At bottom, 'the gist of the question of standing' is whether [plaintiff has] 'such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination.'" *Id.*, (quoting *Massachusetts v. E.P.A.*, 549 U.S. 497, 517 (2007) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962))).

Ramos alleges Genesis violated the FCRA, including inaccurately reporting information in her background report and denying her a reasonable opportunity to contest the inaccurate information. Am. Compl. ¶66. She alleges actual injury caused by GIS' misreporting the assault conviction resulting in Genesis revoking her conditional employment offer. Am. Compl. ¶¶35, 75, 78. Ramos specifically claims only statutory damages against Genesis. Until further clarification from the Supreme Court, Ramos demonstrates sufficient standing based on her FCRA violation claim. *See Sheller P.C., supra*; *Fed.Election Comm'n v. Akins*, 524 U.S. 11, 20 (1998)(standing requirements satisfied where, given the language of the statute and the nature of

6

the injury, Congress intended to authorize suit to protect parties from suffering the kind of injury alleged).[3]

## B. Background Investigation is a "Consumer Report" under FCRA

Genesis and CareerStaff argue the background investigation is not a "consumer report" under §§1681b(b)(2)(A) and 1681b(b)(3) and they have no liability under these statutes. Defendants claim the "report" falls into the exemption described in 15 U.S.C. §1681a(y), because Genesis obtained the report to comply with state laws which, for example, prohibits hiring persons convicted of a felony involving injury to a child for 100 years.

We are persuaded by the analysis in *Newton v. Bank of America, NA*, No. 14-03714, 2015 US Dist. LEXIS 62930 (C.D. Cal. 2015) where the court rejected this identical exemption argument, holding the text of the exclusion is limited by the term "investigation" and background checks are not "investigations" but are required, by written policy, as an employment condition. *See also Manuel v. Wells Fargo Bank, NA*, No. 14-238, 2015 WL 4994538 at *12 (E.D. Va. 2015) (there is no greater "careful inquiry" into the individual's criminal history qualifying the process as an 'investigation' under §1681a(y); the exception would swallow the rule); *Martin v. First Advantage Background Services Inc.*, No. 11-3357, 2014 WL 1260392 (D.Minn. 2014). We are further persuaded by the July 22 and July 29, 2014 letters to Ramos, which specifically reference the FCRA, suggesting Defendants knew their compliance obligations.

Recent authoritative guidance from the Federal Trade Commission ("FTC") further supports our decision.[4] *See* ECF Doc No. 69, attaching FTC September 11, 2015 opinion letter.

---

[3] The Supreme Court granted *certiorari* this Term to review "whether Congress may confer Article III standing upon a plaintiff who suffers no concrete harm, and who therefore could not otherwise invoke the jurisdiction of a federal court, by authorizing a private right of action based on a bare violation of a federal statute." *Spokeo, Inc. v. Robins*, 742 F.3d 409 (9th Cir.2014), *cert. granted*, 135 S.Ct. 1892 (2015).

The FTC does not view "background screening reports in the hiring process" as falling within the [1681a(y)] exclusions. FCRA is undeniably a remedial statute that must be read in a liberal manner in order to effectuate the congressional intent underlying it." *Id. (citing Cortez v. Trans Union, LLC*, 617 F.3d 688, 722 (3d Cir. 2010)). FCRA "should be broadly construed and its exceptions be narrowly applied." *Id.*

### C. Genesis met FCRA's pre-adverse action notice obligation.

In her first claim, Ramos claims Genesis violated 15 U.S.C. §1681b(b)(3)(A) providing in part:

> In using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates ...
>
> (i)   A copy of the report; and
>
>        A description in writing of the rights of the consumer under [the FCRA].

*Id.* The FCRA requires employers provide an applicant with a copy of her background report and notice of rights under FCRA "before taking any adverse action based in whole or in part on the report." *Id.*; *Alibris v. ADT LLC*, No. 14-81616, 2015 WL 5084231, at *10 (S.D. Fla. 2015). The purpose is to provide individuals an opportunity to contest inaccurate information and to avoid an adverse decision by a potential employer based on erroneous information. *Moore v. Rite Aid Hdqtrs. Corp.*, No. 13-1515, 2015 WL 3444227, *9 (E.D.Pa. 2015).

The parties do not dispute Genesis (through GIS) sent Ramos a letter on July 22, 2014 attaching a Notice of Rights, the background report, and stating an intent not to hire her based on the report information, stating:

---

[4] We may rely on FTC authoritative guidance in interpreting the FCRA. *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 848 F.Supp.2d 532, 543 (E.D. Pa. 2012).

> Genesis Healthcare CareerStaff Unlimited has or will be completing their
> review of your application within the next few days, and may take action
> based on the enclosed report.

App. 337. Ramos claims Genesis *actually* made the decision to deny her employment before

July 22, 2014, citing the July 22, 2014 letter, GIS employee notes and emails purportedly

evidencing this "final decision." App. 322.   Genesis changed its grading on Ramos'

qualifications to "Does Not Meet" before sending the July 22, 2014 letter.   Ramos claims she

had no real opportunity to contest the report forming the basis of this decision and Genesis

accordingly violated FCRA §1681b(b)(3)(A).   Genesis argues it did not take "adverse action"

until its July 29, 2014 letter informing Ramos of its decision not to hire her.

We begin by recognizing a preliminary decision to take adverse action does not trigger

the FCRA's notice obligation. *Manuel v. Wells Fargo*, at \*12. "The FCRA 'expressly allows for

the formation of an intent to take adverse action before complying with §1681b(b)(3) because it

states that 'the person *intending to take*' adverse action must provide the report and description

of rights prior to taking the adverse action." *Id. (citing Javid v. SOS International, Ltd.,* No. 12-

1218, 2013 WL 2286046 at \*4 (E.D.Va. 2013)(*quoting Obabueki v. Int'l Bus. Machs. Corp.*, 145

F.Supp.2d 371, 392 (S.D.N.Y. 2001)). "The formation of intent, therefore, cannot be the adverse

action itself." *Id.*

"Adverse action" in this context means "a denial of employment or any decision for

employment purposes that adversely affects any current or prospective employee." 15 U.S.C.

§1681a(k)(1)(B)(ii).   Under the FCRA's "catchall provision," the term "adverse action" also

extends to "any action taken or determination that is made in connection with an application that

was made by … any consumer" and is "adverse to the interests of the consumer." 15 U.S.C.

§1681a(k)(1)(B)(iv).

9

In *Obabueki v. International Business Machines, Corp,* 145 F. Supp.2d 371 (S.D.N.Y. 2001), the background report disclosed plaintiff's prior criminal conviction. Members of the potential employer's human resources department discussed the conviction on October 11, 1999, and decided to withdraw plaintiff's offer. The employer sent a letter on October 13, 1999. The potential employee could not successfully explain the conviction and on October 18, 1999, the employer withdrew the conditional offer.     As here, plaintiff argued defendant employee took adverse action before sending the "pre-adverse action" letter, but the court disagreed, holding an internal decision to rescind an offer is not adverse action. *Id.* at 391. Because plaintiff had an opportunity to contest and did so, which is what the FCRA statutes envision, there was no violation.

We find even if Genesis formed an intent to revoke Ramos' offer, its internal decision to take an adverse action based on a consumer report does not violate Section 1681b(b)(3) because an adverse action does not <u>occur</u> until the decision is communicated or takes effect. Genesis received the post-July 22, 2014 information, considered it, and cites facts showing it made a decision *after* Ramos had the opportunity to respond. *Moore v. Rite Aid* is consistent:

> Section 1681b(b)(3)(A) thus requires an employer to provide job applicants with their background report, summary of rights, and a "real opportunity" to contest the contents of the background report before the employer relies on the report to take an adverse action against the applicant."

*Moore, supra*, at *4, (citing *Goode, supra,* 848 F.Supp.2d at 540).[5] Ramos had the opportunity to contest, and did so in explaining her position to Shepard on the phone and by e-mail. She received notice and took advantage of the opportunity.

---

[5] Relying on *Moore v. Rite Aid,* Ramos argues she did not have sufficient time between the July 22, 2014 notice letter and final letter notifying her of the withdrawn offer. Ramos cites *Moore* for the proposition five (5) days notice between intent to withdraw conditional offer, and adverse

Ramos urges we follow the district court's recent analysis in *Manuel* claiming it more aptly fits the facts here. In *Manuel,* the district court allowed the jury to determine whether the employer's coding of "ineligible" constituted a final decision before the reporting company sent the pre-adverse action notice. Here, as in *Manuel*, in appears Genesis' July 21, 2014 disqualification based on the criminal conviction triggered GIS' July 22, 2014 letter. Genesis' July 21, 2014 coding of disqualification appears to be the basis for GIS sending the July 22, 2014 letter. Before Genesis' July 21, 2014 "disqualification", GIS appears to only know the background report graded "Requires HR Review." As in *Manuel*, Genesis communicated its July 21, 2014 decision to GIS and then set in motion the GIS notice.

The dispositive difference is what happened after GIS' July 22, 2014 letter. Unlike *Manuel,* Genesis' personnel including Shepard remained involved in addressing Ramos' challenge. We find this distinction persuasive. In *Manuel*, the court cited no evidence of the employer's involvement after making the coding decision of ineligible. The court found in *Manuel* "[a] reasonable jury could find [employer's] adverse hiring decision was final when it was first relayed to [reporting agency] because [employer] was comfortable adhering to that decision without reviewing it if the individual did not file a dispute." *Manuel,* at *12. Here, Genesis' Shepard called Ramos on July 25, 2014 and explained the "flag" on her employment application. Ramos and Shepard discussed the felony charge. Shepard relayed Ramos' explanation to McKinnon in Genesis. On July 27, 2014, Ramos elected to email Shepard who, in turn, relayed it to her Genesis colleague, McKinnon, who in turn relayed the information to

---

action is required. In *Moore,* defendant's letter specifically provided plaintiff with five (5) days to dispute information but defendant did not actually give the five (5) days. The court held defendant bound to its promise of at least five (5) days. The district court did not hold, as a matter of *law,* five days' notice is required. We find no basis to set an arbitrary time frame under the statutory scheme.

11

Genesis' Human Resources Compliance Coordinator Esquibel on July 28, 2014. Genesis then confirmed it would "not be able to move forward with her." On July 29, 2014, Genesis' Shepard told Ramos of Genesis' decision. Other than sending the final adverse action letter on July 29, 2014, GIS does not appear involved in the dialogue between Ramos and Genesis. Unlike *Manuel,* we cannot discern a fact issue whether Genesis' July 22, 2014 coding as disqualified and grading as "Does Not Meet" constituted a final decision. Ramos cites no contrary evidence showing Genesis' repeated contacts with Ramos, and internal discussions, were pretext.

Genesis' internal decision on July 21 and 22, 2014 did not constitute a final decision. It is entitled to make an internal determination of "intent" to revoke the employment offer so long as it affords Ramos a real opportunity to challenge this internal determination. All of the evidence confirms Ramos took advantage of the opportunity and Genesis evaluated her challenge, discussed it internally and only then reached a final decision. Accordingly, the July 22, 2014 pre-adverse action notice complied with the FCRA.

### D. CareerStaff did not violate 15 U.S.C. §1681b(b)(2).

Ramos alleges CareerStaff violated 15 U.S.C. §1681b(b)(2) because Ramos authorized Genesis, and no one else, to procure the background report. Ramos, however, does not dispute Genesis procured the report. SOF ¶19, 70. Genesis may also direct its subsidiary CareerStaff to "cause" the report to be procured, as contemplated by 15 U.S.C. §1681b(b)(2)(A)(i):

> ... a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists *solely* of the disclosure, that a consumer report may be obtained for employment purposes: and
>
> (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A) (emphasis added)

*Martin v. Fair Collections & Outsourcing, Inc.,* No. 14-3191, 2015 WL 4064970, at *3 (D. Md. 2015); *see also Milbourne v. JRK Residential Am., LLC*, No. 12-861, 2014 WL 5529731, at *2 (E.D. Va. 2014).

Ramos testified she believed she applied for a position with Genesis, and acknowledges Genesis and CareerStaff were one and the same.[6] App. 150. Whether Genesis procured the investigative report, or directed CareerStaff personnel to procure the report is immaterial. Genesis procured the report for its benefit, including the benefit of CareerStaff. Ramos does not direct us to any fact supporting her claim against CareerStaff and may not sustain a claim under 15 U.S.C. §1681b(b)(2).

Based on the undisputed facts of record, we do not find a genuine dispute CareerStaff obtained Ramos' authorization in accordance with the FCRA prior to obtaining its report. Ramos authorized CareerStaff to obtain a background report following her application.

### E.  Disputed facts preclude summary judgment for GIS on Ramos' claim of negligent failure to accurately report Ramos' criminal history.

Ramos claims GIS violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information in her background report.[7] Ramos must show four elements:

> (1) inaccurate information was included in a consumer's credit report; (2) the inaccuracy was due to defendant's failure to follow reasonable procedures to assure maximum possible accuracy; (3) the consumer suffered injury; and (4) the consumer's injury was caused by the inclusion of the inaccurate entry.

---

[6] Email addresses of human resources personnel for CareerStaff, Genesis and Therapists Unlimited all end at the same domain of "@GenesisLLC.com."

[7] Ramos confirms she does not allege *willful* misreporting; her claim against GIS is only in negligence. ECF Doc. No. 45, p. 19.

*Cortez v. Trans Union, LLC,* 617 F.3d at 708 (quoting *Philbin v. Trans Union Corp.,* 101 F.3d 957, 963 (3d Cir.1996)).

Ramos alleges GIS' failure to exclude derogatory information not in her criminal history *caused* Genesis to deny her employment.   Am.Compl. ¶75. GIS contends Ramos cannot demonstrate injury caused by inaccurate reporting as a matter of law, and describes multiple reasons Ramos would have been denied employment regardless of the inaccurate reporting, including blatant lies on her application.   In an FCRA case, the plaintiff must demonstrate "the alleged FCRA violation was [a] substantial factor in causing the asserted actual damages." *Smith v. LexisNexis Screening Solutions, Inc.*, 76 F. Supp. 3d 651, 665-66 (E.D. Mich. 2014)(quoting *Khoury v. Ford Motor Credit Co., LLC,* No. 13–11149, 2013 WL 6631471, at *6 (E.D.Mich. 2013)).

Ramos does not direct us to evidence suggesting inaccurate reporting resulted from GIS' failure to follow reasonable procedures to assure "maximum possible accuracy" of information. In her Counterstatement of Facts (ECF Doc. No. 45-1), Ramos claims GIS did not carefully evaluate the disclosure listed on the Texas Department of Public Safety website, which provides it "cannot guarantee the records you obtain through this site relate to the person about whom you are seeking information" and further, the information contained therein "reflects only information in the computerized Criminal History database maintained by the Texas Department of Public Safety.   Contact the contributing agency for specific or additional information regarding charges or dispositions."  (ECF Doc. No. 45-1, ¶¶9-12.)

"The reasonableness of a credit reporting agency's procedures is 'normally a question of fact for trial unless the reasonableness or unreasonableness of the procedures is beyond question.'" *Cortez*, 617 F.3d at 709 (quoting *Sarver v. Experian Info. Solutions*, 390 F.3d 969,

14

971 (7th Cir. 2004)).    We find a jury could reasonably conclude GIS' report was a substantial

factor in causing Ramos' injury, despite Plaintiff's own misinformation in her application.  *Id.*;

*Philbin, supra,* 101 F.3d at 968-69.  A jury will resolve the disputed factual issues regarding

Ramos' §1681e(b) claim including causation, injury, and whether GIS undertook reasonable

measures to assure maximum possible accuracy of its report. *Cortez,* 617 F. 3d. at 707.[8]

### F. GIS did not report criminal history, other than convictions, over seven years old.

Ramos claims GIS violated 15 U.S.C. §1681c(a)(5):

> no consumer reporting agency may make any consumer report containing any of the
> following items of information:

> \*         \*         \*

> (5) Any other adverse item of information, other than records of convictions of crimes
> which antedates the report by more than seven years.

§1681c(a)(5).[9]

GIS included a report of conviction more than seven years old.  Ramos contends only a

<u>criminal conviction</u> more than seven (7) years old is excepted, and she does not have a felony

"conviction".  GIS contends the exception applies and permits report of a <u>record of criminal</u>

<u>conviction</u> more than seven (7) years old, and GIS properly "reported" such record.

We agree with GIS as the plain language permits report of "records of convictions of

crimes which antedates the report by more than seven years." GIS reported a "record of

conviction of a crime" more than seven (7) years old. There is no qualifying language in this

---

[8] "Reasonable procedures are those that a reasonably prudent person would undertake under the circumstances.  Judging the reasonableness of a credit reporting agency's procedures involves weighing the potential harm from inaccuracy against the burden of safeguarding against such inaccuracy." *Cortez,* 617 F. 3d at 709 (citing *Philbin*, 101 F.3d at 963.)

[9] Ramos challenges only GIS' misreporting of a felony conviction.  Ramos does not challenge GIS' report of Ramos' convictions for misdemeanor assault, DUI or passing bad checks.

statutory provision limiting reports to only *accurate* "records of convictions of crimes" more than seven (7) years old.  Requirements as to accuracy of reporting are outlined in other FCRA obligations.  To interpret this statute otherwise would read an additional duty and obligation into the statute – imposing a requirement the CRA "report" only "accurate" information.

As shown *infra,* Ramos will seek a jury's fact finding as to GIS's liability for negligence leading to alleged inaccuracy of the background report.  As to §1681c(a)(5), Ramos cannot prevail as a matter of law.  There is no dispute GIS reported a record of conviction more than seven (7) years old, as the FCRA permits.

## III.  Conclusion

Genesis complied with the FCRA.  Ramos authorized CareerStaff to receive the background report.  GIS properly reported a record of conviction more than seven (7) years old.  The remaining issue for the jury is whether GIS violated Ramos' rights under §1681e(b) by failing to ensure maximum possible accuracy in its reporting, and if such a violation is a substantial factor in causing Ramos injury.

16